UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-20050-CV-MORENO

COREY MUSSELMAN, M.D., et al.,
    Plaintiffs
vs.

BLUE CROSS AND BLUE SHIELD
OF ALABAMA, et al.,
    Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

THIS CAUSE came before the Court upon Defendants' Motion to Dismiss and Incorporated Memorandum of Law **(D.E. No. 16)**, filed on **March 8, 2013**.

Defendants moved to dismiss the complaint, which seeks a declaration that the antitrust claims asserted in *Conway v. Blue Cross and Blue Shield of Alabama, et al.* (N.E. Ala. 2:12-cv-01133-RDP)(hereinafter, "*Conway*") are not Released Claims under the settlement agreements approved by this court in a multi-district class action case styled *Thomas v. Blue Cross and Blue Shield Ass'n*, Case No. 03-CIV-21296 (S.D. Fla. 2003)(hereinafter, "*Love*"). Defendants assert that this complaint should be dismissed because the antitrust claims in *Conway* are indeed Released Claims under the settlement agreements. The Plaintiffs, on the other hand, argue that their claims as medical providers are not Released Claims. In addition, the Plaintiffs argue that the decision on whether the claims in the *Conway* complaint are released should be decided by the Alabama district judge after full discovery has taken place.

THE COURT has considered the motion and the pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the Motion to Dismiss is GRANTED.

I.  **BACKGROUND**

  A.  **The *Love* Action**

On April 17, 2000, the Judicial Panel on Multidistrict Litigation ordered the creation of *In re Managed Care Litigation*, Case No. 1:00-MDL-1334 (hereinafter, "*Shane*"). This MDL case concerned, *inter alia*, reimbursement for health care services by managed care companies and was divided into two tracks: one involving broad claims by health care providers and the other involving broad claims by subscribers to health care plans. The provider track, i.e., *Love*, was a class action brought on behalf of all providers who submitted claims to health care companies, including the *Conway* defendants, for the provision of medical services.

In *Love*, the providers alleged that health insurance companies engaged in a common scheme to systematically deny, delay, and diminish payments to them. *See* Love, D.E. 1 at 5. Between 2005 and 2007, the Defendants in this action, who were all defendants in *Love*, entered into three class action settlement agreements ("the Settlement Agreements") resolving the claims in *Love*. The first defendant to settle was WellPoint, Inc. and its subsidiaries, which entered into the WellPoint Settlement Agreement in July 2005, settling both *Love* and similar claims that had been asserted against WellPoint in *Shane*. *See Shane*, D.E. 4321. The Blue Cross settlement was in April 2007, followed by the Highmark settlement in October 2007. *See Love*, D.E. 928; *Love*, D.E. 1073. Under each agreement, the Defendants agreed to make substantial payments to the class members and their counsel and to implement numerous business practice initiatives. Pursuant to these agreements, Defendants paid class members and their counsel more than $384 million in cash and spent more than $535 million making business practice changes that the *Love* plaintiffs stated had a value to the settlement class of more than $3.4 billion. In exchange, Defendants received broad releases from

the Plaintiffs in this action and injunctions from the Court barring releasing parties from bringing Released Claims. Those releases apply to:

> [A]ny and all causes of action, judgments, liens, indebtedness, costs, damages, obligations, attorneys' fees, losses, claims, liabilities and demands of whatever kind, source, or character whether arising under the federal or state law, which (consistent with the Parties' understanding of the settlements in Shane) includes, but is not limited to, the Racketeer Influenced and Corrupt Organizations Act, antitrust and other statutory and common law claims, intentional or non-intentional, (each a **"Claim"**) arising on or before the Effective Date, that are, were or could have been asserted against any of the Released Parties by reason of, arising out of, or in any way related to any of the facts, acts, events, transactions, occurrences, courses of conduct, business practices, representations, omissions, circumstances or other matters referenced in the Action or addressed in this Agreement, whether any such Claims was or could have been asserted by any Releasing Party on its own behalf or on behalf of other Persons, or to the business practices that are the subject of § 7.  This includes, without limitation and as to Released Parties only, any aspect of any fee for service claim submitted by any Class Member to a Blue Plan . . . and any allegation that any Blue Party has conspired with, aided and abetted, or otherwise acted in concert with other managed care organizations, other health insurance companies, Delegated Entities, and/or other third parties with regard to any of the facts, acts, events, transactions, occurrences, courses of conduct, business practices, representations, omissions, circumstances or other matters related to the Action . . . .

*Love*, D.E. 928 at § 13.1(a). The Settlement Agreements expressly recognize that it was an "essential element" of the agreements that the Defendants "obtain the fullest possible release from further liability to anyone relating to the Released Claims." *Id.* at§ 13.3.

    **B.**    **The *Conway* Complaint**

On July 24, 2012, Jerry L. Conway, D.C., an Alabama chiropractor, filed the *Conway* putative class action alleging that Defendants had violated federal antitrust law by conspiring with each other and with other Blue plans to reduce competition, inflate insurance premiums, and under-compensate physicians for their services. Conway filed an amended complaint on August 2, 2013, alleging the same premise. *Conway* alleges that the Defendants explicitly agreed to divide the

United States into "service areas" and then to allocate those geographic markets among the Defendants, free of competition (the "BCBS Market Allocation Conspiracy"). The Plaintiffs in *Conway* also allege that the Defendants agreed to fix prices for services rendered by healthcare providers (the "BCBS Price Fixing Conspiracy"). *See Conway* Am. Compl. ¶ 2. According to the amended complaint, as a result of decreased competition, healthcare providers, including Plaintiffs, are paid much less and are subjected to less favorable terms than they would be absent the BCBS Market Allocation Conspiracy. *Id.* at ¶ 6. The amended complaint also alleges that Defendants have fixed the prices for healthcare reimbursement in each service area and, as a result, healthcare providers on those service areas receive significantly lower reimbursement than the healthcare providers would absent the Price Fixing Conspiracy. *Id.* at ¶ 7.

C. The *Musselman* Complaint

On January 7, 2013, the Plaintiffs filed this action in Miami seeking a declaration that the antitrust claims asserted in *Conway* are not Released Claims under the Settlement Agreements. Plaintiffs are represented by the same attorneys who brought the *Shane* and *Love* actions and include Dr. Charles Shane and Dr. Rick Love, the named plaintiffs in those actions.

Plaintiffs contend that the antitrust claims asserted in *Conway* are not Released Claims because they were "not litigated or resolved as part of the *Love* or *Shane* cases or the settlement agreements with Defendants." Plaintiffs allege that, whereas the *Conway* claims address illegal territorial restrictions and other anticompetitive restrictions set forth in the BCBSA License agreements, the *Love* claims concerned the insurance companies' improper methods of denying, delaying, and diminishing physicians' fees for service insurance claims. Additionally, Plaintiffs contend that the *Conway* claims are not Released Claims because they arose after the Effective Dates

of the Settlement Agreements. *See* D.E. 49 at 1-2.

Therefore, the issue before the Court is whether the antitrust claims in *Conway* fall within the definition of Released Claims pursuant to the plain language of the Settlement Agreements and the prior decisions of this Court and the Eleventh Circuit. The Court first decides that the decision on that issue is properly before this Court, the original court assigned to the Multi District Settlement. Second, the Court concludes that the *Conway* claims are Released Claims.

## II. Standard

"To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions," instead plaintiffs must "allege some specific factual basis for those conclusions or face dismissal of their claims." *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1263 (11th Cir. 2004). When ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true. *See St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 953 (11th Cir. 1986). This tenet, however, does not apply to legal conclusions. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Moreover, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 1950. Those "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). In short, the complaint must not merely allege a misconduct, but must demonstrate that the pleader is entitled to relief. *See Iqbal,* 129 S. Ct. at 1950.

## III. ANALYSIS

### A. The Issues are Properly before this Court.

This Court was the original court assigned to the Multi-District Settlement. Furthermore, the

Dismissal Orders entered by this Court provide that "this Court hereby retains jurisdiction as to all matters relating to (a) the interpretation, administration, and consummation of the Settlement Agreement and (b) the enforcement or injunctions in this Order. *Love,* D.E. 1250; *Love*, D.E. 1286; *Shane*, D.E. 4684. Thus, the issues raised in Defendants' Motion to Dismiss are properly before this Court.

B. **The claims in *Conway* are Released Claims.**

A litigation release of claims is a contract and is construed according to the normal rules of contract interpretation. *See, e.g., V & M Erectors, Inc. v. Middlesex Corp.*, 867 So. 2d 1252, 1253-54 (Fla. 4th DCA 2004). When interpreting a contract under Florida law, the Court is guided first by the language of the documents itself. *See Dows v. Nike, Inc.*, 846 So. 2d 595, 601 (Fla. 4th DCA 2003). The language of the Court's Final Approval Orders clearly prohibits class members from initiating lawsuits against Released Parties for any claims released by the Settlement. *See, e.g., Love,* D.E. 721 at ¶ 9; *Love,* D.E. 1286 at ¶ 9. Therefore, this Court must dismiss Plaintiffs' claims if (i) the Plaintiffs are class members, (ii) Defendants are Released Parties under the Settlement Agreements, and (iii) the claims at issue in *Conway* are Released Claims. It is undisputed that Plaintiffs are class members and that Defendants are Released Parties. Therefore, the analysis turns on whether the claims at issue in *Conway* are Released Claims.

When determining whether the *Conway* claims are Released Claims under the Settlement Agreements, the Court must determine whether the *Conway* amended complaint "shares the same operative nucleus of fact" as the *Love* complaint, that is, whether the "primary rights and duties" are the same. *Thomas v. Blue Cross and Blue Shield Ass'n*, 333 F. App'x 414, 418 (11th Cir. 2009). A claim is a Released Claim under the Settlement Agreements if it satisfies two requirements: (1) the

claim must be asserted by reason of, arise out of, or relate to "any of the facts...or other matters" referenced in the *Love* action or to the business practices that are the subject of § 7 of the Settlement Agreements (the subject matter requirement) and (2) the claim must have arisen on or before the effective date of the Settlement Agreements (the accrual requirement). Each of these requirements will be analyzed in turn.

### 1. The Subject Matter Requirement: First Prong

The subject matter requirement consists of two prongs; if either of the prongs is satisfied, a claim will be considered a released claim. The first prong of the releases, set out in the first sentence, provides that a claim is released if it is "arising out of" or is "in any way related to" (i) "any of the facts, events, transactions, occurrences, courses of conduct, business practices, representations, omissions, circumstances, or other matters referenced" in *Love* or (ii) "the business practices that are the subject of § 7" of the Settlement Agreements. *Love*, D.E. 928 at § 13.1(a).

This Court has previously determined that antitrust conspiracy claims such as the ones at issue are Released Claims under both of the prongs. Earlier in *Shane*, WellPoint asked the Court for an injunction to prevent eight physician groups and one physician organization from participating as plaintiffs in a Missouri lawsuit (*Kansas City Urology Care, PA v. Blue Cross Blue Shield of Kansas City*) against WellPoint and other managed health care companies. *See Shane*, D.E. 5863. *Kansas City Urology* asserted two antitrust claims under a Missouri state statute. The complaint alleged that the defendants, who controlled a significant portion of the medical insurance market in the region, acted in concert to control the rate of reimbursement for medical care in the region. The complaint further alleged that the region was particularly susceptible to price fixing because it was controlled by a few dominant companies who have conspired to cultivate and use their market power

to force unconscionable reimbursement rates from doctors with the intent to manipulate prices. WellPoint contended that the WellPoint settlement approved by the Court on December 22, 2005, which is one of the Settlement Agreements at issue here, precluded the plaintiffs from participating in the suit. This Court held that the claims in *Kansas City Urology* were Released Claims pursuant to, *inter alia*, the first prong of the release. The first sentence releases all claims that "are in any way related to...any of the facts, acts, events...[or] representations...referenced in the Action." *Kansas City Urology's* allegations involving the defendant insurance companies' conspiracy with other insurance providers to diminish the rate of reimbursement for insurance claims made by doctors were related to those in *Shane*, which involved claims that health insurance companies conspired to improperly deny and diminish insurance claims made by doctors in violation of the federal RICO statute. *Id.*

Similarly, this Court held that antitrust claims at issue in *Henstorf v. WellPoint Health Networks, Inc.*, which were based on allegations in a California action that defendants had conspired to use their market power to underpay physicians who provided workers compensation services, were Released Claims. *See Shane*, D.E. 5851, adopting 5838. This Court rejected the argument that the release should be applied narrowly, holding that the allegations in the California action were clearly "in connection with any matter or fact set forth or referred to in" the federal class action giving rise to the settlement. The fact that the complaints in the federal class action did not specifically address workers' compensation networks was irrelevant, as the California action arose from the identical factual predicate as the federal class action litigation and, thus, the allegations could have been pled in the class action. *See id.* The Eleventh Circuit affirmed this Court's decision. *See Klay v. All Defendants*, 309 F. App'x 294 (11th Cir. 2009)(*per curiam*).

8

For the same reasons that the claims described above were Released Claims, the claims in *Conway* are also released. *Conway* arises out of and relates to the "facts, acts, events...or other matters" in *Love*. *Conway* is based on Plaintiffs' allegation that Defendants conspired to "suppress competition and to increase their profits...by decreasing the rates paid to healthcare providers...." *Conway* Am. Compl. ¶ 226. *Love* was based on the similar allegation that the defendants had engaged in a common scheme to systematically deny, delay, and diminish the payments due to doctors. *See Love* Compl. ¶ 5. In short, both complaints are based on allegations that Defendants, acting through BCBSA, conspired to reduce provider reimbursement. As a result, *Conway* falls within the scope of the first sentence of the release.

Plaintiffs urge the Court to interpret the release narrowly to find that *Conway* falls outside its scope. *See* D.E. 49 at 6. However, the Eleventh Circuit has rejected the argument that the release does not apply simply because a lawsuit involves different allegations than *Love* or asserts a different cause of action. The determination of whether a claim is a Released Claim under the language of the Settlement Agreement depends not on the cause of action alleged but on the nucleus of operative fact underlying the claim. *See Thomas*, 594 F. 3d 814 at 822. In *Health Care Serv. Corp. v. Kolbusz*, 594 F. 3d 814, 822 (11th Cir. 2010), the Eleventh Circuit held that, under the broad language of the release, tortious interference and defamation claims were Released Claims even though such claims had never been asserted in *Love*, stating that it was "irrelevant that [plaintiff's] claims depend on a different legal theory than the claims asserted in the class action or require [the plaintiff] to prove matters in addition to or different from the claims asserted in the class action." This reasoning is particularly applicable in this case. Even though the plaintiffs in *Love* asserted RICO claims, the release expressly states that it applies to "any and all" claims "arising under federal

9

or state law," including "antitrust" claims.[1]

As this Court held when concluding the claims in *Henstorf* were barred, it is foreseeable that Plaintiffs could have amended their pleadings to add the antitrust claims at issue if settlement negotiations had failed. The Settlement Agreement is clearly intended to embrace all potential claims and not merely those that were expressly pled at the time the record was frozen based on the parties' decision to conduct settlement negotiations. *See Shane,* D.E. 5838. Therefore, the claims in *Conway* are within the scope of the release and are barred.[2]

### 2. Subject Matter Requirement: Second Prong

The claims in *Conway* are also Released Claims pursuant to the second prong of the release. The second prong of the release, set out in the second sentence, provides that a claim is a released claim if it involves "<u>any aspect of any fee for service claim</u>" or "any allegation that any...Party has conspired with, aided and abetted, or otherwise acted in concert with other managed care organizations, other health insurance companies, Delegated entities, and/or other third parties" with

---

[1] Plaintiffs argue that *Doctors Health, Inc. V. Aetna*, 605 F. 3d 1146 (11th Cir. 2010) supports a contrary result. However, in *Doctor's Health*, the claims were not Released Claims because, *inter alia*, unlike the plaintiffs in *Shane*, the plaintiff alleged that the HMO manager *overpaid* medical providers. Importantly, the claim pursued by Doctors Health in the adversary action shared <u>no factual basis</u> with the *Shane* complaint. In contrast, just like in *Love*, the *Conway* complaint alleges Defendants underpaid medical providers by conspiring, through BCBSA, to use their market power to force providers to provide services on Defendants' terms.

[2] Defendants additionally argue that the claims in *Conway* are Released Claims under the second part of the first prong, i.e., because they are "arising out of" or are "in any way related to"... (ii) "the business practices that are the subject of § 7" of the Settlement Agreements. *See Love*, D.E. 928 at § 13.1(a). The Court does not reach this argument as the *Conway* claims are clearly Released Claims under the first part of the first prong (the claims are "arising out of" or are "in any way related to" (i) "any of the facts, events, transactions, occurrences, courses of conduct, business practices, representations, omissions, circumstances, or other matters referenced" in *Love*....") and are therefore barred. *Id.*

regard to the "facts, acts, events, transactions, occurrences, courses of conduct, business practices, representations, omissions, circumstances or other matters related to" *Love*. Under the plain language of the second sentence of the release, the claims in *Conway* are released because they involve the amount providers are paid for services they provide to Defendants' members, i.e., "an aspect of a fee for service claim."

Plaintiffs attempt to distinguish the claims presented in *Love*, which alleged that the defendants denied, delayed, or diminished the payments or fees that providers were due under their agreement from those in *Conway*, which allege that BCBSA manipulated the rates of reimbursement. *See* D.E. 49 at 8, 15. The Court rejects Plaintiffs' argument that rates of reimbursement are not aspects of fee for service claims but are more accurately considered aspects of the agreements between providers and Defendants. *See* D.E. 49 at 15. This distinction is artificial. The amount a physician is paid is plainly an aspect of a fee for service claim, whether or not reimbursement is addressed in a contract or agreement between a participating provider and an insurer. This Court has previously held that the antitrust claims in *Kansas City Urology* involving the rate of reimbursement for fee for service claims violated sentence two of the release. *See Shane*, D.E. 5863. The Court reaches the same conclusion here.

Plaintiffs further contend that, even if the *Conway* claims are aspects of fee for service claims, the meaning of the clause "any aspect of any fee for service claim" should be construed as only applying to those aspects of fees for service claims referenced in *Love* or the Settlement Agreements. This argument is inconsistent with the Court's previous rulings. When enjoining the antitrust claims in *Kansas City Urology,* this Court held that use of the word "includes" indicates that the second sentence expands, rather than limits, the scope of the release. *Id.*

Where, as here, the cause of action alleged so clearly relates to matters of underpayment and non-payment of fee-for-service claims, the Court has no choice but to dismiss those claims. *See Thomas*, 594 F. 3d at 822 (instructing that the *Love* release "extends to any and all causes of action of whatever kind, source, or character that are related to matters addressed in the class action.")

Additionally, the antitrust claims in *Conway* are Released Claims under the second sentence because they include allegations that "any Blue Party has <u>conspired with</u>, aided and abetted, or otherwise <u>acted in concert</u> with other managed care organizations, other health insurance companies, Delegated Entities, and/or other third parties with regard to any of the facts, acts, events, transactions, occurrences, courses of conduct, business practices, representations, omissions, circumstances or other matters related to the Action." The amended complaint in *Conway* alleges that "BCBSA and the other Blue Cross entities have <u>agreed</u> to divide and allocate the geographic markets for the sale of commercial health insurance into a series of exclusive areas...[and] by doing so, the BCBSA members have <u>agreed</u> to suppress competition and to increase their profits by decreasing the rates paid to healthcare providers...." *Conway* Am. Compl. ¶ 226. The amended complaint even expressly calls Defendants' actions "the BCBS Market Allocation <u>Conspiracy</u>" and the "BCBS Price Fixing <u>Conspiracy</u>." Plaintiffs' claims fall squarely within the second sentence of the release.

### 3. The Accrual Requirement

The release only applies to claims that arose "on or before the Effective Date" of the Settlement Agreements. Plaintiffs argue that the *Conway* claims are not Released Claims because they only pertain to anticompetitive conduct in which Defendants engaged after the Effective Dates. Because such conduct could not have injured Plaintiffs until after the Effective Dates, Plaintiffs

contend, the claims did not arise until after the Effective Dates. Plaintiffs further argue that the claims in *Conway* are not Released Claims because an antitrust claim accrues each time Defendants pay providers based on allegedly anticompetitive rates and the *Conway* claims only pertain to healthcare services provided and payments received after the Effective Dates. *See* D.E. 49 at 2, 17.

Plaintiffs' attempts to circumvent the releases by excluding any facts occurring prior to the Effective Dates of the Settlement Agreements are foreclosed by prior rulings on this very issue. Both this Court and the Eleventh Circuit Court of Appeals have consistently rejected the argument that claims involving post-settlement conduct cannot be enjoined by the Settlement Agreements. *See Klay v. All Defs.*, 309 F. App'x 294, 294-95 (11th Cir. 2009); *Thomas v. Blue Cross and Blue Shield Ass'n*, 594 F. 3d. 914, 922 (11th Cir. 2010); (D.E. 6363); *see also Thomas v. Blue Cross and Blue Shield Ass'n*, 333 F. App'x 414, 420 (11th Cir. 2009).

For example, in *In Re WellPoint, Inc. v. Out-of-Network "UCR" Rates Litigation*, the physician plaintiffs argued that their RICO, Sherman Act, and ERISA claims should not be enjoined because they were based solely on services provided after the Effective Date and, under the "separate accrual" doctrine, a new cause of action accrued each time they suffered injury. This Court rejected this argument and held that, even though the plaintiffs had limited their claims to services provided after the Effective Date, their claims were Released Claims because they arose from an alleged conspiracy and course of conduct that began long before that date. *Shane*, D.E. 6116.

The antitrust claims in *Conway* are based on an alleged conspiracy dating back to long before the Effective Dates of the Settlement Agreements. As a result, Plaintiffs could have asserted these claims before *Love* was settled. Therefore, even if Plaintiffs limit their claims for services provided

after the Effective Dates, the claims are still released.[3]

Pursuant to the plain language of the releases and the prior decisions of this Court and the Eleventh Circuit, the Court holds that the claims asserted in *Conway* are Released Claims. Accordingly, it is

**ADJUDGED** that Defendants' Motion to Dismiss is hereby GRANTED.

DONE AND ORDERED in Chambers at Miami, Florida, this 20 day of August, 2013.

FEDERICO A. MORENO

UNITED STATES DISTRICT JUDGE

Copies provided to:

Counsel of Record

---

[3] Plaintiffs cite *Hold v. Manzini*, 736 So. 2d 138, 141-42 (Fla. 3d DCA 1999) and *Scheck v. Burger King Corp.*, 756 F. Supp. 543, 547 (S.D. Fla. 1991) for the proposition that a general release cannot be applied to bar claims that have not yet accrued at the time the release was executed. However, these decisions relate to claims that could not have been brought at the time the releases at issue were signed, unlike the claims in *Conway*.